Signed March 18, 2008.

Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LEGENDS ON LAKE LBJ, LTD., | § | CASE NO. 05-70964-RBK |
| | § | |
| DEBTOR | § | CHAPTER 11 |
| | § | |
| | § | |
| JMO INVESTMENTS, LLC | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-7003-RBK |
| | § | |
| LEGENDS ON LAKE LBJ, LTD., ET AL. | § | (CONSOLIDATED WITH ADVERSARY NO. 07-7001-RBK) |

**ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In addition to the findings of fact and conclusions of law stated orally on the record on January 16, 2008, the Court hereby makes the following Additional Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052 and 9014:

## FINDINGS OF FACT

On December 19, 2007 and December 20, 2007, this Court heard the trial on the merits in the above-referenced adversary proceeding, which involved .319 acres of a tract of land located at the intersection of Highway No. 1431 and Highway No. 2342 in Kingsland, Texas, otherwise known as the tract containing The Legends Golf Course on Lake LBJ sign (the "Intersection Sign Property" a/k/a the "Corner Sign Property") for The Legends Golf Course on Lake LBJ.

Donald Strain ("Buyer" a/k/a "Intervenor") purchased substantially all of the assets of Legends on Lake LBJ, Ltd. ("Defendant" a/k/a "Debtor") in a sale ("Golf Course Purchase"), which was approved by this Court. (Case No. 05-70964, Docket No. 165.) Buyer and Seller argued that one of the purposes of the Golf Course Purchase was to convey the Intersection Sign Property to the Buyer. The Warranty Deed ("Warranty Deed") (Pl.'s Trial Ex. List, Ex. 11), which was executed on September 27, 2006, by the president of the Huckabay Group and as General Partner of Legends on Lake LBJ, Ltd., Rickey B. Huckabay ("Seller"), was used to convey the Legends Golf Course on Lake LBJ to the Buyer. The Warranty Deed did not include a legal description of the Intersection Sign Property.

Seller's attorney, Wiley James ("Seller's Attorney"), subsequently attempted to sell the Intersection Sign Property to Eighty Seven Interests, Ltd. ("Eighty Seven Interests") for $5,000.00 (Pl.'s Trial Ex. List, Ex. 4) by way of an Unimproved Property Contract ("Unimproved Property Contract"). Eighty Seven Interests assigned the rights to purchase the Intersection Sign Property to JMO Investments, LLC ("Plaintiff"). After learning of the Unimproved Property Contract between Seller's Attorney and Plaintiff, Seller notified Buyer. In an effort to avoid legal fees, Buyer submitted a bid for the purchase of the Intersection Sign Property. An agreement was entered into between Buyer and Sherman Fickel and Larry Max ("Fickel and Max"), which would give Buyer the Intersection Sign

Property upon submission of a combined bid by Fickel and Max for the Intersection Sign Property and the Saddle Club North Property. As the high bidders, Fickel and Max purchased the two properties. Of the high bid of $68,000.00, $17,000.00 was allocated to pay for the Intersection Sign Property.

During the trial, Seller's Attorney testified that he told Mr. Brian Lehne ("Lehne") of Eighty Seven Interests that the Unimproved Property Contract was conditioned on Eighty Seven Interests' bid of $5,000.00 being the highest bid at the end of ten (10) days. Lehne testified that the Unimproved Property Contract was never conditioned on a ten (10) day waiting period.

On January 16, 2008, this Court orally ruled in favor of the Seller that: (1) a mutual mistake did exist between the Buyer and Seller in the Warranty Deed; (2) the Warranty Deed should be reformed to include a legal description of the Intersection Sign Property; and (3) Plaintiff's request for specific performance of Plaintiff's Unimproved Property Contract with Seller was denied. (Court ruling ***In re Legends on Lake LBJ, Ltd.*** (Adv. No. 07-7003). January 16, 2008, 2:06.)

After the ruling, Plaintiff requested the Court to find that Seller had breached the Unimproved Property Contract with Plaintiff and that a judgment for damages in the amount of $17,000.00 plus attorney's fees should be entered. Plaintiff asserted that "but for Mr. Huckabay and Mr. James not communicating with each other, this never would have occurred," and "the case law is clear that in the event specific performance cannot be obtained and the contract is clear, concise and enforceable, then the buyer, if he comes with clean hands, is entitled to damages. In this case, the damage is the $17,000.00 bid by Mr. Fickel. The property we intended to purchase is worth $17,000." (Court ruling ***In re Legends on Lake LBJ, Ltd.*** (Adv. No. 07-7003). (January 16, 2008, 2:17.)

## CONCLUSIONS OF LAW

This Court has jurisdiction and venue of this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Standing Orders of Reference of the District Court. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B), (M) & (O).

Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

1. ***Binding Contract***.

A. ***Authority to Contract***.

"An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." ***Gaines v. Kelly***, 235 S.W.3d 179, 182 (Tex. 2007) (citing ***Hester Int'l Corp. v. Fed. Republic of Nig***., 879 F.2d 170, 181 (5th Cir. 1989)). Apparent authority "is based on estoppel, arising 'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" ***Id.*** (quoting ***Baptist Mem. Hosp. Sys. v. Sampson***, 969 S.W.2d 945, 948 (Tex. 1998)); *accord* ***Western Millers Mut. Ins. Co. v. Williams***, 231 F.2d 425, 428 (5th Cir. 1956). To determine an agent's apparent authority, the Court must "examine the conduct of the principal and the reasonableness of the third party's assumptions about [the] authority." ***Gaines***, 235 S.W.3d at 183.

Seller is the principal, with authority to act on behalf of Defendant based on his position as president of Huckabay Group, which is the general partner of Defendant. Seller's trial testimony reveals that Seller knowingly permitted Seller's Attorney to hold himself out as having the authority to sell the Intersection Sign Property and bind Defendant to the Unimproved Property Contract. The testimony

also shows that Seller did not exercise ordinary care, which resulted in Seller's Attorney being clothed with the authority to act. Seller testified that Kent Hale, attorney for CitiBank, and Seller's Attorney, on behalf of Legends on Lake LBJ, negotiated a previous sale, which subsequently fell through. (Proceeding Testimony of Mr. Rickey Huckabay. December 19, 2007, 9:22-9:24.) In addition, Seller's Attorney also signed numerous legal documents on behalf of Defendant and Seller. Specifically, Seller's Attorney signed an Easement Agreement dated June 14, 2006, with Six J. Investment Co. and Enclave at the Legends, LP, which granted Defendant road access to service a maintenance area and a club house. (Pl.'s Trial Ex. List, Ex. 36.)

The most persuasive evidence of Seller's lack of ordinary care, however, is Seller's trial testimony regarding Seller's discussion with Lehne about selling the Intersection Sign Property:

> A. I told him that Mr. James and the Bank were handling the sales of the properties.
>
> Q. Did you direct Mr. Lehne to any person?
>
> A. No, to Mr. James or the Bank. I didn't give him any telephone numbers I don't think.
>
> Q. Didn't you tell Mr. Lehne that he had to call Mr. James if he wanted to talk about purchasing this property?
>
> A. Yes, Sir. That's what I just said–he had to talk to Mr. James or the Bank. And Kent Hale was with the Bank.

(Proceeding Testimony of Rickey Huckabay. December 19, 2007, 9:52-9:53.) Lehne's testimony corroborates this discussion. (Proceeding Testimony of Brian Lehne. December 19, 2007. 2:10.) In addition, Seller testified that he knowingly did not tell Lehne that the Intersection Sign Property was already sold during the above conversation. (Proceeding Testimony of Mr. Rickey Huckabay. December 19, 2007, 9:56:20.) Seller further testified that after he received a copy of the Unimproved Property Contract from Seller's Attorney, he never called Lehne to inform him that the Intersection Sign

Property had already been sold. (Proceeding Testimony of Rickey Huckabay. December 19, 2007, 9:58.)

The foregoing trial testimony regarding the actions of Seller and Seller's Attorney shows that Seller clothed his attorney, as his agent, with the authority to enter into a binding contract to sell the Intersection Sign Property. Seller, by his own admission, does not really know what authority Seller's Attorney had. This lack of ordinary care, in addition to Seller's discussion with Lehne about Seller's Attorney handling the sale of the Intersection Sign Property, would lead any reasonably prudent person to believe that Seller's Attorney had the authority to enter into an enforceable contract.

B. ***Existence of a Contract***.

The elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) the execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration. ***Advantage Physical Therapy, Inc. v. Cruse***, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist.] 2005, no pet.). The Unimproved Property Contract and Record reflect that all of the above-listed elements necessary to enforce the document as a binding contract were present. Seller's Attorney, however, contends that the Unimproved Property Contract was not to have taken effect for ten (10) days in order to determine the existence of other buyers. Seller's Attorney also contends that he told this to Lehne over the telephone prior to execution and delivery of the Unimproved Property Contract. (Proceeding Testimony of Wiley James. December 19, 2007, 11:35.) This kind of condition precedent relates to formation of a contract rather than liability under a contract. ***Progressive County Mut. Ins. Co. v. Trevino***, 202 S.W.3d 811, 814 (Tex. App.–San Antonio 2006, pet. denied). Lehne, testifying for Plaintiff, contends that an oral condition on the

Unimproved Property Contract never existed. (Proceeding Testimony of Mr. Brian Lehne. December 19, 2007, 2:19).

Seller's Attorney and Plaintiff agree that the Unimproved Property Contract does not provide for a ten (10) day condition. Parol testimony may be used to show that an ordinary written instrument was executed under an agreement that the written instrument was not to become effective unless certain conditions existed. ***Holt v. Gordon***, 107 Tex. 137, 138, 174 S.W. 1097,1098 (1915); *see also* ***Brewer v. Tedford***, 447 S.W.2d 479, 484 (Tex. Civ. App.–El Paso 1969, writ ref'd n.r.e.); ***Pallas v. Powers***, 271 S.W.2d 479, 483 (Tex. Civ. App.–Eastland 1954, writ ref'd). "The effect of the parol testimony, and the finding thereon, is not to vary the terms of a binding instrument, but merely, as a condition precedent, to postpone the effective date of the instrument until the happening of a contingency. . . ." ***Baker v. Baker***, 143 Tex. 191, 199, 183 S.W.2d 724, 728 (1944). Nevertheless, "an oral contemporaneous condition cannot be proved if it is inconsistent with the terms of a written instrument duly delivered to the party against whom the condition is sought to be invoked." ***Denman v. Hall***, 144 Tex. 633, 636, 193 S.W.2d 515, 516 (1946). Plaintiff argues that an oral condition precedent to the contract never existed and, in the alternative, that the oral condition precedent is inconsistent with the written terms of the Unimproved Property Contract.

Regarding the oral condition precedent as inconsistent with the Unimproved Property Contract, Plaintiff points to paragraph 22 ("the Integration Clause") of the Unimproved Property Contract, which states:

> 22. **AGREEMENT OF PARTIES**: This contract contains the entire agreement of the parties and cannot be changed except by their written agreement.

(Pl.'s Trial Ex. List, Ex. 4 ¶ 22.) Plaintiff's contention that the oral condition precedent is inconsistent with the Integration Clause, however, is unpersuasive in light of ***American Slicing Mach. Co. v.***

***Vincent***, 279 S.W. 317 (Tex. Civ. App.–Amarillo 1926, no writ). That court concluded in a similar case that:

> [t]he provisions of the written contract to the effect that no verbal agreement could change or modify it, that there was no verbal understanding different from the printed contract, and that the order should not be countermanded, do not show an unconditional delivery thereof, nor contravene the proposition that the contract was delivered upon a condition, and therefore never became binding, because these provisions would not control until the contract had become effective, and, under the record in this case, the condition upon which the contract was to become binding never occurred, and hence the contract and none of the provisions thereof became enforceable.

***Id***. at 318. Based on ***American Slicing Mach Co.***, the Integration Clause in the instant case would not prevent the Court from concluding that the Unimproved Property Contract never came into existence because, as Plaintiff asserts, the oral condition precedent never occurred.

The Court, therefore, must determine if a ten (10) day oral condition precedent was part of the discussion between Seller's Attorney and Lehne. Whether the parties reached an actual agreement is a question of fact. ***Advantage Physical Therapy, Inc.***, 165 S.W.3d at 24. Seller's Attorney, in response to Plaintiff's questions, testified to the oral condition precedent as follows:

> Q. And then you said you had a subsequent conversation with Mr. Lehne, after you sent it [the Unimproved Property Contract] back to him on the 11th?
>
> A. No, I told him before I sent it back that he needed to hold it for ten days until I can check and see if any other buyers wanted the property. And then I signed it and sent it back to him.
>
> . . . .
>
> Q. Isn't there an agreement regarding hold it–cause you're actually calling it–instead of it being an unequivocal unconditional earnest money contract, you just made it an earnest money contract based upon the condition of there being a bid process. Isn't that correct?

A. I didn't condition it–there are two separate agreements. One was, he was going to hold it for ten days . . . . There was no change to the Legends Agreement to sell the property.

Q. Mr. James, how can you put something out for bid in the face of an unconditional earnest money contract?

A. There is [sic] two separate agreements Mr. Wilkins, I will tell you again. That contract was not going to be put in place, i.e. taken to the title company, by Mr. Lehne's agreement for ten days. Now if he violated that agreement, that's a different issue. But there was no changes [sic] in the conditions, Debtor was going to sell .319 acres for $5,000.00 using the property description supplied by Mr. Lehne.

(Proceeding Testimony of Mr. Wiley James. December 19, 2007, 11:35:30-11:38:25.) During the trial, Lehne contradicted Seller's Attorney's testimony by answering the following questions:

Q. Now you've heard Mr. James's testimony that he says that when y'all were discussing this, I'm going to sign it, send it back to you, but you got to hold it for 10 days. Did that occur?

A. No sir it did not.

Q. When you got it what did you do with it–when you got that contract?

A. I took it immediately to the title company.

Q. Was that consistent with your email that you told him that you were going to expedite this matter?

A. Yes sir.

(Proceeding Testimony of Brian Lehne. December 19, 2007, 2:19). Further, Seller's Attorney's Legal Assistant sent a fax to Lehne on January 11, 2006, with an attached signed copy of the Unimproved Property Contract (Pl.'s Trial Ex. List, Ex. 40.), one day after Seller's Attorney and Lehne discussed the purchase over email. The fax cover letter provides: "Enclosed Please find the executed unimproved property contract with regard to the above mentioned matter. Should you have any questions, please

contact our office." This fax neither provides the ten (10) day condition that Seller's Attorney contends was part of the agreement nor does it advise Plaintiff of the next step in the supposed bidding process. At the trial, Seller's Attorney also responded to Plaintiff's questions regarding the fax:

> Q. Do you recall dictating any correspondence to Mr. Lehne where you–these conditions that you just talked about–you put that in the letter–about hold it for ten days?
>
> A. No, I don't think it's in the letter.
>
> Q. Nor is it in Exhibit 4, the contract?
>
> A. Correct.

(Proceeding Testimony of Mr. Wiley James, December 19, 2007, 11:33:34.)

Plaintiff and Defendant offer conflicting evidence as to the decisive issue of whether a condition precedent existed. Plaintiff bears the burden of proving the elements of a contract. ***Howell v. Kelly***, 534 S.W.2d 737, 740 (Tex. Civ. App.–Houston [1st Dist.] 1976, no writ). Plaintiff and Defendant, as stated above, do not dispute that the written Unimproved Property Contract is unambiguous, absolute on its face, and contains all of the elements necessary to enforce it as a binding contract. Defendant, however, argues the condition precedent as a defense. A condition precedent is an affirmative defense to the formation of a contract. *See* ***Texas Dep't of Hous. & Community Affairs v. Verex Assurance***, 68 F.3d 922, 928 (5th Cir. 1995) (analyzing conditions precedent under Texas law). Defendant has the burden of proof on an affirmative defense. *See* ***Chuska Energy Co. v. Mobil Exploration & Producing N. Am., Inc.***, 854 F.2d 727, 730 (5th Cir. 1988) (stating that "illegal[ity] is an affirmative defense to be raised in the answer and proved by the defendant, who carries the burden of proof on that issue"). Defendant's evidence and Plaintiff's evidence directly conflict, and Seller's Attorney's testimony was the only evidence Defendant offered to support the affirmative defense of a condition

precedent. The facts are most consistent with Plaintiff's version and Defendant, therefore, failed to carry its burden of proof as to the affirmative defense of a condition precedent.

2. ***Breach of Contract***.

On January 16, 2008, the Court denied Plaintiff's request for specific performance finding that: (1) a mutual mistake existed between the Buyer and Seller in the Warranty Deed; and (2) the Warranty Deed should be reformed to include a legal description of the Intersection Sign Property. (Court ruling ***In re Legends on Lake LBJ, Ltd.*** (Adv. No. 07-7003.) January 16, 2008, 2:06.) Because Defendant cannot convey the Intersection Sign Property, as agreed to in the Unimproved Property Contract, Plaintiff has requested the Court to find that Defendant breached the contract.

The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. ***Aguiar v. Segal***, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied); *accord* ***Sport Supply Group, Inc. v. Columbia Cas. Co.***, 335 F.3d 453, 465 (5th Cir. 2003). The Unimproved Property Contract is valid in light of the conclusion above that there is insufficient evidence to support a finding of a condition precedent to the Unimproved Property Contract. Further, Lehne tendered performance by depositing $100.00 as earnest money with Highland Title Company along with the Unimproved Property Contract (Proceeding Testimony of Mr. Brian Lehne. December 19, 2007, 2:13), as required by paragraph 5 of the Unimproved Property Contract. And, on January 23, 2007, Lehne received an email regarding bids for the Intersection Sign Property that was the subject of the Unimproved Property Contract. Defendant's failure to perform the sale under the Unimproved Property Contract constitutes a breach of the Unimproved Property Contract. Plaintiff's damages therefore consist of the loss of the Intersection Sign Property that is surrounded and adjoined by Plaintiff's property. The loss of the

Intersection Sign Property will make it more difficult to sell or develop the surrounding property because of the absence of a hard corner.

3. ***Damages and Attorneys' Fees***.

Parties to a contract may stipulate the amount of damages to be recovered in the event of a breach. ***Aguiar v. Segal***, 167 S.W.3d 443, 455 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). Such an agreement binds the parties and furnishes the measure of damages. ***Id.*** Paragraph 15 of the Unimproved Property Contract provides, in pertinent part, that:

> [i]f Seller fails to comply with this contract . . . Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

`(Pl.'s Trial Ex. List, Ex. 4 ¶ 15.) "Generally, the measure of damages for breach of contract to sell real estate is the difference between the contract price and the market value of the property at the time of the breach." ***Long v. Brown***, 593 S.W.2d 371, 372 (Tex. Civ. App.–Dallas 1979, writ ref'd n.r.e.). Plaintiff argues that the damage amount is the $17,000.00 bid by Mr. Fickel. (Court ruling ***In re Legends on Lake LBJ, Ltd.*** (Adv. No. 07-7003). January 16, 2008, 2:17.) The $17,000.00, however, is the market value of the property, and this value is decreased by the Unimproved Property Contract price of $5,000.00 (Pl.'s Trial Ex. List, Ex. 4 ¶ 3.), which equals $12,000.00, plus the refund of the earnest money paid of $100.00. In addition, a party who prevails on a breach of contract claim is entitled to recover reasonable attorney's fees for prosecution of the claim. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 2007); ***Gereb v. Smith-Jaye***, 70 S.W.3d 272, 273 (Tex. App.–San Antonio 2002, no pet.).

## CONCLUSION

The Court finds that: (1) Plaintiff and Defendant had a valid and binding Unimproved Property Contract for the Intersection Sign Property; and (2) Defendant breached the Unimproved Property Contract. Damages in the amount of $12,100.00, plus reasonable attorney's fees, should be awarded to Plaintiff for breach of the Unimproved Property Contract. The Plaintiff may file a post judgment application for attorney's fees under Local Bankruptcy Rule 7054 within 14 days. A separate judgment will be rendered.

Any Finding of Fact which should more appropriately be characterized as a Conclusion of Law shall be considered a Conclusion of Law herein. Similarly, any Conclusion of Law which should more appropriately be characterized as a Finding of Fact shall be considered as a Finding of Fact herein.

# # #